# Richmond.

## CRAIG v. WILLIAMS.

### FEBRUARY 1st, 1894.

1. APPEAL—*Jurisdiction.*—Where claim of each appellant is less, though the aggregate be more, than $500, no appeal lies, unless the questions as to all are the same, and they have been consolidated.

2. ATTACHMENTS—*Where returnable.*—All attachmeuts, whether by regular writ or by indorsement on the summons, must be returned to a term of the court where pending. Code, § 2965.

3. CHATTEL MORTGAGES—*Lex loci contractus.*—A trust deed of chattels, valid and recorded in another State, is valid in this State, though not recorded here.

Appeal from decree of circuit court of Franklin county, rendered September 26, 1892, in the consolidated causes entitled Williams, White & others v. Ormond & Goforth, John Craig & others, in which there were thirteen cases consolidated and heard together. Craig, a resident of South Carolina, was the mortgagee in a mortgage regularly executed and recorded there, but not in accordance with the laws of Virginia. Williams, White & Co., attached property in said county to satisfy their claims against Ormond & Goforth, which property was the subject of the mortgage. The question was as to the priority between the attachments and the mortgage. The circuit court having decreed against Craig, he appealed. Opinion states the case.

*Anderson & Hairston* and *Staples & Munford,* for appellant.

*Dillard & Lee* and *Kean & Lile,* for appellees.

LACY, J., delivered the opinion of the court.

The appellees, Williams, White & Co., brought their suit in equity in the circuit court of Franklin county, and for an attachment on certain personal property situated in said county, against the appellant, John H. Craig, and Ormond & Goforth, non-residents of the State of Virginia, to have satisfaction of certain debts due by the said Ormond & Goforth to the said complainants. Ormond & Goforth are railroad contractors and constructionists doing work in the said county of Franklin, in the State of Virginia, where the said property is situated. The said John H. Craig is a non-resident of Virginia, resident in the State of South Carolina, and the mortgagee in a mortgage executed by the said Ormond & Goforth in the said State of South Carolina, on the 2d day of November, 1890, upon the property attached, now in this State, and other property then in the State of South Carolina, which was admitted to record, upon insufficient authentication by the law of this State, on the 26th day of November, 1891, by the evidence of one witness, one J. S. Brice. Upon the bringing of this suit, numerous other suits were brought for different debts of various amounts, varying in amount from $1,300 to $50, but otherwise identical in character; and, in proceedings had in them, they were consolidated and heard with the first-named suit, and the same decree rendered for all. None of these debts appear to be disputed or denied, but the point of contest between the several plaintiffs and the defendant Craig is as to the priority of the home attachments, issued and levied in the county of Franklin, and the lien of the mortgage executed in the State of South Carolina, and duly recorded according to the laws of that State. The circuit court held the foreign mortgage ineffectual for want of proper recordation in the State of Virginia, and sustained the lien of the attachments, and decreed accordingly for their several debts in favor

of the attaching creditors; whereupon John H. Craig applied for, and obtained an appeal to this court.

The first question which arises here on the appeal is by certain attaching creditors, Oglesby, Tutwiler & Co., and others, who, like them, have debts of less amount than $500, it being conceded that the debts of Williams, White & Co. and Sims & Woell exceed the said sum of $500, which is necessary to give this court jurisdiction of such an appeal, which is merely pecuniary; and they, the said Oglesby, Tutwiler & Co., and others in like situation, insist that the appeal should be dismissed as to them, for the stated reason that the amount involved is less than the amount required to sustain the jurisdiction of this court. This court has no jurisdiction to hear an appeal which is merely pecuniary, and is less in amount than $500. In order that the defendant may enjoy the right of appeal when it depends on the amount, the judgment or decree must be for at least $500, principal and interest, exclusive of cost, and that the plaintiff may enjoy it, his claim must not be less than $500, principal and interest; and, if several creditors are seeking, by creditors' bill, to subject property to their debts, no one of which amounts to as much as $500, although, in the aggregate, the sum is much greater, there can be no appeal on the creditors' part, because their claims are independent one of another; but the owner of the property, when the total debts is as much as $500, although severally the claims be less, may appeal. 4 Minor Inst., 857; *Umbarger* v. *Watts*, 25 Gratt., 167; *Railroad Co.* v. *Colfelt*, 27 Gratt., 779, 780; *Devries* v. *Johnston, Id.*, 808; *Gage* v. *Crockett, Id.*, 735. And, where the interests are distinct and separate on the part of the appellants, the decree may be reversed as to one, and dismissed as to another, as having been improperly awarded, because the subject of controversy, as to him, is less than $500 (*Cocke* v. *Minor*, 25 Grat., 260,); but where the amount in controversy involved in the appeal is above the jurisdictional amount as to one of the appellants, the question is properly before this court as to that one; and

when the questions as to all others are identical, and the claims have been consolidated and heard together, the validity or invalidity of the decree will affect them all, and involve the validity of the decree as to all, and in all respects. The interests in such case are such that they cannot be severed in any court where they are considered, and the decision here as to the rights of one will conclude the rights of all in like condition. *Witz* v. *Osborn*, 83 Va., 227. We must therefore overrule the motion to dismiss the appeal as to some of the appellees for want of jurisdiction.

There are two causes of error assigned by the appellant. The first is that the attachments sued out by the appellees were invalid because they are made returnable to rules, and, being attachments in equity, they are authorized to be made returnable to a term of the court, being issued in a pending suit. The second is that priority was given to the attachments because they were issued and levied before the foreign mortgage was recorded, according to the laws of this State.

Upon the first question—as to the validity of the attachments when they are, as here, returned to rules instead of to a term of the court—we will remark that the statute of this State requires (section 2965) that "if issued in a pending suit it shall be returnable to a term of the court in which the same is pending." The former law of this State added, after the foregoing, the words, "or to some rule day thereof." There is, therefore, no longer any lawful authority to return such an attachment to rules. It is argued that this is a mistake—an accidental omission—on the part of the lawgivers, because it would render the law nugatory in many cases like this, where attachments were issued after suit was brought, because, a summons having been issued, served, and returned, the requirement in the law that the clerk should indorse on a subpœna an order, to the officer to whom it is addressed, to attach the property, would be an ineffectual direction when the attachment was subsequent, and could refer only to writs of

attachment, and not to such as this. But (1) the act expressly declares that any attachment issued under that chapter (chapter 141, Code) shall be, if in a pending suit, returnable to a term of the court in which the same is pending; and (2) the supposed difficulty lying in the way of endorsing it on the subpœna in the case is answered by the provision of section 2964. The provision is: "Upon such affidavit the plaintiff may require the clerk to endorse on the summons an order to the officer to whom it is directed to attach," etc. Nor is there any difficulty in the way in the subsequent provision that "any attachment under this section shall be executed in the same manner and shall have the same effect as at law, but the proceedings therein shall be the same as in other suits in equity." The contention that this proceeding is required only as to, and refers only to, technical writs of attachments, such as are issued at law independent of the summons, and not to proceedings in equity, where it is insisted that the summons and order for attachment are inseparable, is set at rest by the law, in the plainest terms. Reliance is placed on the provision : "Any attachment under this section shall be executed in the same manner as at law and have the same effect as at law. But the proceedings therein shall be the same as in other suits in chancery;" and it is claimed that the manner of return is a part of the proceedings. If there can be said to be any proceedings in a suit until the original process is returned executed, it is obvious that the above general reference to the proceedings must refer only to such proceedings as are not specially provided for in the statute. We think the circuit court erred in upholding the return of the attachments as valid.

But the learned counsel for the appellees insist that although the attachment should be invalid, and the lien thereof ineffectual, that, nevertheless, the suit remains, and that they are entitled to relief under their bill, independent of the attachment law. We will briefly consider the question raised as to the ineffectual registry of the foreign mortgage. The appel-

lant insists that the law of the place of the contract, where this is also the place in which the mortgaged property is situated at the time of the mortgage, governs as to the validity, construction, and effect of the mortgage, which will be enforced in another State as a matter of comity, although not executed or recorded according to the requirements of the law of the latter State. On the other hand, the appellees insist that the laws of other governments have no force beyond their territorial limits, and, if permitted to operate in other States, it is upon the principle of comity, and only where neither the State nor its citizens would suffer any inconvenience from the operation of the foreign law. It is said in 3 Amer. & Eng. Enc. Law, p. 190: "The general rule is that a chattel mortgage which is valid under the laws of the State where it was executed, both as between the immediate parties thereto and as against third persons, will be so held by the courts of a sister State, to which the property may be removed. And if a mortgage is valid where it is made, and if it is executed and recorded according to the laws of the State or country of its execution, it will be enforced in the courts of another State or country as a matter of comity, although it is not executed according to the requirements of the law of the latter State; and this is because of the general principle that the law of the place of contract governs as to the nature, validity, construction, and effect of the contract," citing numerous authorities. In Jones on Chattel Mortgages, p. 299, § 299, the same doctrine is laid down. "By the comity of nations, as a general rule, a contract valid where it is made is valid anywhere, and the law of the place of the contract controls as to the construction of it. Without this rule there could not safely be commercial or business intercourse between citizens of different nations. But the laws of a nation or a State have not, *ex proprio vigore*, any binding force beyond the limits of its territory. Any effect they have is *ex comitate*." It is further said (section 303): A statute relating to the recording of mortgages has no

application to a mortgage made outside the State, unless specially made so, though the property be afterwards brought within the State; and it does not matter that such mortgage was made by a citizen of the State while temporarily absent in another State with such property. If the mortgage be duly recorded in the State where it was executed, and the mortgagor afterwards takes the property with him into another State, no registration of the mortgage is necessary, unless made so by positive statute of that State. *Beale* v. *Williamson*, 14 Ala., 55; *Offut* v. *Flagg*,, 10 N. H., 46; *Peterson* v. *Kaigler*, (Ga.) 3 S. E., 655; *Hubbard* v. *Andrews*, 76 Ga., 177; *Kanaga* v. *Taylor*, 7 Ohio St., 134; 70 Am. Dec., 65, 66; Jones, Chat. Mortg., § 200; *Hornthall* v. *Burwell*, (N. C.) 13 S. E., 721; *Bank* v. *Lee*, 13 Pet., 107. There are decisions to the contrary, to which we have been referred, and which we have considered, but the general rule is as we have stated in the foregoing authorities. We have no express statute in Virginia requiring foreign mortgages to be recorded, and the weight of authority is that in such case our recording acts do not apply to them. The circuit court of Franklin county decided otherwise on both these propositions, and we think the decision of that court was erroneous; and the decree appealed from must be reversed and annulled; and such decree rendered here as the said circuit court ought to have rendered.

DECREE REVERSED.