ELIZABETH O'BRIEN, as Administratrix of the Estate of JOHN COYLE, Deceased, Appellant, v. BUFFALO FURNACE COMPANY, Respondent.

1. MASTER AND SERVANT — MASTER'S DUTY TO PROTECT SERVANT FROM NEGLIGENCE OF CO-SERVANT IN USE OF DANGEROUS EXPLOSIVE. Where it appears, in an action brought to recover for the death of plaintiff's intestate, who was killed while employed at a blast furnace, by the premature explosion of dynamite which he was helping prepare to be used in breaking up slag accumulated at the base of a furnace, that the accident was caused by the negligence of a foreman, under and with whom the deceased was working, in pushing or packing dynamite into an iron pipe encased in the slag, with a steel, instead of a wooden rod; and it also appears that the general manager of the blast furnace, the *alter ego* of the owner thereof, who knew that it was dangerous and improper to use a steel rod for tamping dynamite, observed the foreman using the steel rod to force a piece of dynamite down the pipe, but walked away without warning him against the use of such rod — it is erroneous to direct a verdict for defendant upon the ground that the negligence of the general manager in permitting the foreman to use the steel rod was negligence in the performance of a duty by an employee in respect to a detail of the work for which the defendant is not responsible: since the general manager was the *alter ego* of the defendant, not a co-servant of the deceased, and as it is the duty of the master to use reasonable care to so conduct his business as not to subject servants to unnecessary danger in the prosecution of their work, it was a question for the jury whether, in view of the imminence of the danger, the general manager should not have intervened on the instant and discharged the foreman unless he properly prosecuted the work.

2. ASSUMPTION OF RISK. The question of the assumption of the risk by plaintiff's intestate was also for the jury, notwithstanding that he knew that dynamite was dangerous and that he assumed such risk as was inherent even in the careful use thereof, where there was no proof that he knew of the increased danger from the use of the steel rod.

*O'Brien* v. *Buffalo Furnace Co.*, 94 App. Div. 609, reversed.

(Argued November 28, 1905; decided December 15, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 29, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court

at a Trial Term and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene M. Bartlett* for appellant.   The danger to which the plaintiff's intestate was subjected by the direction of the foreman or the superintendent and foreman of the defendant was not an incident of his employment. (*Lofrano* v. *N. Y. & M. V. W. Co.*, 55 Hun, 452.)   The proposition of the court below, that if a master places a competent servant, who has knowledge of all the danger, in charge of his work, he is not liable for the injuries to a co-employee which result from such person's failure to inform the person injured of the latent dangers of the work, cannot be sustained. (*Mannion* v. *Hagan*, 9 App. Div. 99; *Andreoli* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345; *La Torre* v. *C. S. Co.*, 9 App. Div. 145; *Fowler* v. *B. F. Co.*, 41 App. Div. 84; *Maltby* v. *Belden*, 45 App. Div. 384; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368.)   An employee inexperienced in a particular work which is dangerous from causes not apparent, but known to his employer, is entitled to have such information as will apprise him of the nature of the work and the necessary risks in its execution. (Thomas on Neg. 800; *Gates* v. *State*, 128 N. Y. 221; *Kranz* v. *L. I. R. R. Co.*, 123 N. Y. 1; *Flike* v. *B. & A. R. R. Co.*, 53 N. Y. 549; *Crispin* v. *Babbitt*, 81 N. Y. 521; *Benzing* v. *Steinway*, 101 N. Y. 552; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 281.)

*Tracy C. Becker* and *Louis L. Babcock* for respondent. The death of plaintiff's intestate was not due to any failure of the defendant to give him warning as to the danger of the work.   It was wholly due to the negligence of a concededly competent fellow-servant as to the method of doing the work. (*Cullen* v. *Norton*, 126 N. Y. 1; *Kimmer* v. *Weber*, 151 N. Y. 417; *Laughlin* v. *State*, 105 N. Y. 159; *Perry* v. *Rogers*, 157 N. Y. 251; *Di Vito* v. *Crage*, 165 N. Y. 378;

*Capasso* v. *Woolfolk*, 163 N. Y. 472; *Maltbie* v. *Belden*, 167 N. Y. 307; *Crow* v. *Orr*, 140 N. Y. 450; *Klos* v. *H. R. O. & I. Co.*, 77 App. Div. 566; *Vitto* v. *Farby*, 15 Misc. Rep. 153.)

CULLEN, Ch. J.   The action is brought by the administrator of a servant against his master for negligence causing the death of the servant.   The defendant operated a blast furnace in the city of Buffalo.   The deceased, prior to the time of the accident, had been employed hoisting iron to the top of one of the furnaces, which was about eighteen feet in diameter and eighty-five feet in height.   In the course of time slag accumulated at the base of the furnace which rendered it necessary to take the structure down and rebuild it. When the furnace was down the usual practice was to break up the slag by explosives.   On the day of the accident the work of blasting the slag had been intrusted to one Minor, whose general competency there is nothing in the evidence to impeach.   Encased in the slag was a coil of iron pipe.   Minor proceeded to fill this pipe with dynamite, and the deceased was called from his work by his foreman to assist Minor by cutting up a stick of that explosive and dropping it into the pipe.   The evidence tends to show that the deceased hesitated to comply with this direction and expressed fear of the danger the work involved.   In response to this both the foreman and one Bachman, the general manager of the defendant, assured him that there was no danger.   While the deceased dropped the pieces of dynamite into the pipe Minor used a steel rod some six feet long to push down the pieces that adhered to the sides of the pipe or clogged it.   While this work was being prosecuted the charge exploded, the plaintiff's intestate was killed and Minor severely injured. The evidence tended to show that the use of a steel or metal rod to tamp an explosive, especially dynamite, was improper, and that a wooden rod should have been used for the purpose.

We may concede that from the foregoing facts no infer-

ence of liability on the part of the master could be drawn, and if they were the only facts, the judgment below would have to be affirmed. While it is the duty of the master to warn the servant of any latent or extraneous danger in the prosecution of the work and to give him proper instructions, if instructions are necessary to guard against such dangers, this rule does not apply to an obvious risk of the work. The danger inherent in the use of high explosives, however carefully handled, is a matter of common knowledge, and that the deceased was aware of this is shown by his expressions concerning the danger of the work. The statements of the foreman and the superintendent that there was no danger seem no more than declarations of opinion on their part which the deceased might accept or reject as he deemed wise. Nor do we see that any instructions to him would have added to his security or prevented the accident. The explosion was caused by the negligence of Minor in using a rod of steel instead of one of wood. This was the negligence of a fellow-servant in the performance of a detail of the work. This further fact, however, appeared: Bachman, who, under the evidence in this case, was the *alter ego* of the defendant, at least five minutes before the explosion, observed Minor using the steel rod to force the pieces of dynamite down the pipe. With this knowledge he walked away from the scene of the accident, returning just before its occurrence. As he testifies, he was about to warn Minor against the use of the steel rod when the explosion took place. It further appears by Bachman's own testimony that he was entirely aware that it was improper to use a metal rod in tamping dynamite or other explosives. His excuse for not having intervened at the time he observed Minor using the rod was that what the latter was doing "didn't amount to tamping." It seems to us that the work was substantially of the same character as tamping, and that the danger from using the metal rod was as great in one case as in the other, or, at least, that the jury might have so found. Had Bachman, on discovering that Minor was doing the work in a dangerous manner, promptly intervened the accident

would not have occurred; or had he even told the deceased, to whom he had previously said that there was no danger, that the work as then conducted was dangerous, the deceased might have fled from the danger and, at least, the injury to him been avoided.

The learned Appellate Division, while assuming that the jury might have found negligence on the part of Bachman, was of opinion that it was negligence in the performance of a duty by an operative in respect to a detail of the work, for which the master was not responsible, and cited *Crispin* v. *Babbitt* (81 N. Y. 516), and *Cullen* v. *Norton* (126 id. 1). We entertain a different view. As already said, Bachman was the manager of the corporation, and, therefore, its *alter ego*. He was, for the purposes of this case, the master. The detail of the work, which was the servant's duty, was done in this case not by him, but by Minor. In this respect the case radically differs from those cited by the Appellate Division. It is the duty of the master to use reasonable care to so conduct his business as not to subject servants to unnecessary danger in the prosecution of their work. For this purpose he must provide a reasonably safe place in which the servant is to work, reasonably safe tools and appliances with which to work, competent fellow-servants with whom to work, and, if the work is of a complicated character, proper rules and regulations for the prosecution of the work and reasonable supervision to see that the rules are complied with. The work in which the deceased was engaged not being of the latter character, probably it was not necessary to promulgate any rules on the subject. The object, however, of establishing and enforcing rules is that each servant may so perform his work as not to occasion unnecessary danger to his fellow-servants. While in work of a simple character no rules may be necessary, still the duty of the master is the same to use reasonable care that each servant properly does his work. Ordinarily, so far as liability to his servants is concerned, that duty is performed when he selects competent fellow-servants.

But when he sees that one servant is so negligently doing his work as to occasion danger to a fellow-servant, it is his duty to interpose and direct that the work be properly done. (*Doing* v. *N. Y., Ont. & W. Ry. Co.*, 151 N. Y. 579; *Dowd* v. *Same*, 170 N. Y. 459.) Had the explosion taken place not on this occasion but on a subsequent one, and had Bachman, instead of witnessing, been informed of the reckless manner in which Minor had been doing his work, involving a fellow-workman in the greatest danger, it would have been a question for the jury to determine whether Bachman was not negligent in retaining Minor in his employ, no matter what his competency may have been as to mere skill and knowledge, at least without promise on the part of Minor to properly conduct the work in the future. If this be so, very much more was it a question for the jury whether, in view of the imminence of the danger, Bachman should not have intervened on the instant and discharged Minor unless the latter properly prosecuted the work. The question of the plaintiff's intestate's assumption of the risk was also for the jury. Doubtless he knew that dynamite was dangerous and he assumed such risk as was inherent even in the careful use of that article. There is no proof, however, that he knew of the increased danger from the use of the metal rod.

The judgments of the Appellate Division and of the Trial Term should be reversed and a new trial ordered, costs to abide the event.

GRAY, O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Judgments reversed, etc.